UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| LATISHA McMILLAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-308 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On August 30, 2005, plaintiff filed her applications for benefits alleging a February 28, 2005 onset of disability.[1] (A.R. 75-77, 85-87). Her claims for DIB and SSI benefits were denied on initial review. (A.R. 53-56, 80-83). On May 7, 2008, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 360-88). On September 4, 2008, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 15-23). On February 25, 2010, the Appeals Council denied review (A.R. 4-6), and the ALJ's decision became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, September 2005 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. She raises the following issues:

1. Whether plaintiff is "entitled to benefits because she satisfies all the elements of Listing 12.05C;" and

2. Whether plaintiff is "entitled to a remand for a new hearing to consider the effects of her fatigue on her ability to work."

(Plf. Brief at 1, Statement of Issues, docket # 9). Upon review, I find that the issues raised by plaintiff do not provide a basis for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the

Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on February 28, 2005, her alleged onset of disability, and continued to meet the requirements through the date of the ALJ's decision. (A.R. 17). Plaintiff had not engaged in substantial gainful activity on or after February 28, 2005. Plaintiff had the following severe impairments: "borderline intellectual functioning (BIF); back strain; history of acute heart condition; [] renal insufficiency (pericardial fluid collection); and obesity." (A.R. 17). The ALJ found that

plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments:

> The claimant's mental impairment does not meet or medically equal the criteria of listings 12.02, 12.04, 12.05, or 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
>
> In activities of daily living, the claimant has a moderate restriction. The claimant testified that she has been unable to obtain a driver's license. Her statements in the file indicate that she is able to use public transportation, get her children ready for school, groom, clean the house, fix dinner, iron, wash dishes, vacuum, shop, watch television and walk to get exercise for her back and legs. She cares for her children in the evening, does laundry, and reads. (Exhibits 5E, 9E)[A.R. 114-21, 133-38].
>
> In social functioning, the claimant has moderate difficulties. The claimant alleges that she has only fair social skills and does not have any close friends (Exhibit 9E)[A.R. 133-38]. Her speech patterns are slow and grammar is poor (Exhibit 1E)[A.R. 88-90]. She is able to communicate verbally as well as in writing. She uses the telephone; visits with friends, relatives, and neighbors; and goes out to eat or to the movies (Exhibit 9E)[A.R. 133-38].
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant alleges she needs reminders to start tasks and she has poor concentration to complete tasks. However, she lives independent from others and is raising her children. She pays bills, counts change, and uses a checkbook/money orders. Her hobbies include watching television and reading. She has the ability to follow spoken instructions. (Exhibit 5E)[A.R. 114-21].
>
> As for episodes of decompensation, the claimant has experienced no episodes of decompensation. There is no indication the claimant has had a psychiatric hospitalization or any medical intervention of equal relevance to suggest decompensation. There is no evidence the claimant required increased treatment, a less stressful situation, a significant alteration in medication, or need for a structured psychological support system.
>
> Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B"

criteria are not satisfied.  The undersigned has also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

In reviewing the state agency medical opinion, the undersigned notes that the "B" criteria in Exhibit 5F [A.R. 185-98] indicated the claimant has had one or two episodes of decompensation.  However, that opinion appears to have been based on claimant's report of an emergency room visit because of stress in Exhibit 4F [A.R. 181].  The undersigned will not make such a finding based on a report from a claimant who has been found to be not fully credible.  The state agency's opinion regarding the claimant's cognitive disorder, anxiety, and affective disorder is otherwise compelling medical evidence that she has moderate impairment in her activities of daily living, social functioning, and concentration, persistence and pace. Although the claimant achieved the following intelligence test scores of [a] Verbal I.Q. score of 71; a Performance I.Q. score of 69; and a Full Scale I.Q. score of 67 [A.R.180] and her high school records [A.R. 349-56] indicate that her learning disability was present before she attained age 22, this does not establish that she ha[d] deficits in adaptive functioning.  The evaluating and reviewing psychologists noted that she was alert in various testing cues and able to follow directions and instructions without difficulty.  She is able to [make] simple work related decisions, respond to supervision, and is able to make adjustment to changes in routine work setting.  She is independent in her personal care as well (Exhibit 4F)[A.R. 179-84].  There is no evidence to establish the claimant's borderline intellectual functioning precludes her from performing simple, unskilled tasks.  The state agency psychologist's opinions are given significant weight with the exceptions as discussed (Exhibits 5F, 6F)[A.R. 185-204].

(A.R. 18-19).  The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work.  (A.R. 19).  He found that plaintiff's testimony regarding her subjective limitations was not fully credible.  (A.R. 19-21).  The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis[2] because she was capable of performing her past relevant work as

---

[2]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity.  Next, the claimant must demonstrate that she has a 'severe impairment.'  A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.'  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be

a hotel housekeeper. (A.R. 21). Alternatively, the ALJ found that plaintiff was not disabled at step 5 of the sequential analysis. Plaintiff was 29 years old as of her alleged onset of disability and 32 years old on the date of the ALJ's decision. Thus, at all times relevant to her claims for DIB and SSI benefits plaintiff was classified as a younger individual. (A.R. 22). Plaintiff has at least a high school education and is able to communicate in English. (A.R. 22). The ALJ found that the transferability of work skills was not material to a disability determination. (A.R. 22). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 18,000 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 384-86). The ALJ found that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 22-23).

**1.**

Plaintiff argues that she is entitled to an award of benefits because she met the requirements of listing 12.05(C). (Plf. Brief at 16-21; Reply Brief at 2-4). Upon review, I find that the ALJ correctly applied the law and that his findings that plaintiff did not meet or equal the requirements of listing 12.05(C) are supported by more than substantial evidence.

It is well established that a claimant must show that she satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125; *see also Perschka v. Commissioner*, 411 F. App'x 781, 787 (6th Cir. 2010). The listing must be read as a whole and plaintiff had the burden of

---

considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009); *see Lindsley v. Commissioner*, 560 F.3d 601, 602-03 (6th Cir. 2009).

demonstrating that she met all parts of the listing. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

"Listing 12.05 describes circumstances in which mental retardation is severe enough to preclude gainful activity." *Turner v. Commissioner*, 381 F. App'x 488, 491 (6th Cir. 2010). "The structure of listing for mental retardation is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). "[A] claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); *see also Cheatum v. Astrue*, 388 F. App'x 574, 576 (8th Cir. 2010); *Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009).

The specific requirements of listing 12.05 are as follows:

> 12.05  Mental Retardation: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A.  Mental incapacity as evidenced by dependence on others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B.  A valid verbal, performance, or full scale IQ of 59 or less;
> OR

      C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
OR
      D. A valid verbal, performance or full scale IQ of 60 though 70, resulting in at least two of the following:
          1. Marked restriction of activities of daily living; or
          2. Marked difficulties in maintaining social functioning; or
          3. Marked difficulties in maintaining concentration, persistence, or pace; or
          4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

    A.     <u>Diagnostic Description</u>

The ALJ found that plaintiff did not meet or equal the diagnostic description's requirement of significantly subaverage general intellectual functioning with deficits in adaptive functioning[3] initially manifested during the developmental period before age 22. (A.R. 18-19). It was plaintiff's burden to submit medical evidence in support of her claims. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Further, it was her burden at step 3 of the sequential analysis to demonstrate that her impairment met or equaled all the requirements of listing 12.05. *See Kyle v. Commissioner*, 609 F.3d at 855.

Plaintiff's developmental period ended in December 1997 when she reached age 22. Two school reports are the only evidence from plaintiff's developmental period that she submitted in support of her claims for DIB and SSI benefits. The first report is dated March 1995 and states that plaintiff failed to achieve passing scores on her graduation competency tests. (A.R. 354-56). The second report is dated June 1, 1995. It indicates that plaintiff was exempt from the competency

---

[3]"Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication and daily living skills." *West v. Commissioner*, 240 F. App'x 692, 698 (6th Cir. 2007).

test requirements, because she had a learning disability, and that she would be graduating with her class that month because she had earned sufficient credits. (A.R. 351-53). The ALJ found that this was evidence of a learning disability before age 22, but it did not establish deficits in adaptive functioning. (A.R. 19). Plaintiff attempted to bolster this marginal evidence from her developmental period with testimony that she had attended special education classes.[4] However, it is well established that placement in a special classroom falls short of establishing significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22. *See Foster v. Halter*, 279 F.3d at 352; *McLeichy v. Commissioner*, No. 1:09-cv-857, 2010 WL 3852318, at * 2 (W.D. Mich. Sept. 29, 2010). If plaintiff had submitted additional school records, and further assuming that they had shown poor academic performance, she would not have carried her burden. The Sixth Circuit "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes v. Commissioner*, 357 F. App'x 672, 677 (6th Cir. 2009). During her developmental period, plaintiff was independent in her personal care, was able to provide care for her baby,[5] and worked as a housekeeper and "line server/cook."[6] (A.R. 61-62, 92, 106-09). She was able to make

---

[4] Plaintiff's attorney elicited testimony that "basically all" plaintiff's high school classes were special education classes. (A.R. 375). She testified that she had problems with math, but could make change. She had problems spelling difficult words, but was able to read and understand newspaper articles. (A.R. 375-76). She testified that after graduating from high school she attended Grand Rapids Community College for one year and studied medical billing, but never completed her degree. (A.R. 365).

[5] Plaintiff gave birth to her first child before her high school graduation and within the developmental period. (A.R. 365). Her second child was born outside the developmental period.

[6] Plaintiff argues that the Commissioner's decision should be overturned because the ALJ "confus[ed] the rating of degree of functional limitation with the assessment of residual functional capacity." (Plf. Brief at 20). She argues that "the ability to perform simple, unskilled tasks is a

simple work-related decisions, respond to supervision, and make adjustment to changes in work setting. (A.R. 19). A claimant capable of performing such activities does not suffer from adaptive deficits. *See Harris v. Commissioner*, 330 F. App'x 813, 815 (11th Cir. 2009); *see also Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar. 31, 2011) (Maloney, C.J.).

Plaintiff argues, without supporting legal authority, that the ALJ committed reversible error by adding a "sufficiency" requirement not found in the listing. (Plf. Brief at 17-20). This argument is meritless. Listing 12.05 requires "a *significantly* subaverage general intellectual functioning *with* deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 12.05 (emphasis added). Trivial deficits do not suffice. *See Foster v. Halter*, 279 F.3d at 355. The claimant's deficits in adaptive functioning during the developmental period must be significant in order to satisfy the listing's requirements. *See Hayes v. Commissioner*, 357 F. App'x at 677; *accord* AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL HEALTH DISORDERS TEXT REVISION, 41 (4th ed. 2000)(DSM-IV-TR) ("The essential feature of Mental Retardation is significantly subaverage general intellectual functioning [] that is accompanied by *significant limitations in adaptive functioning . . . .*") (emphasis added). The ALJ applied the correct legal standard, and his factual finding that

---

consideration at steps 4 and 5 of the sequential process, not step 3." (Plf. Brief at 21). The ALJ did not conflate step 3 with later steps of the sequential process. (A.R. 18-19). Plaintiff worked during her developmental period and was able to make simple work-related decisions, respond to supervision, and make adjustments to changes in work settings. (A.R. 19). It was entirely appropriate for the ALJ to consider the work that plaintiff had performed during her developmental period in determining whether she met the diagnostic description and severity requirements of listing 12.05. *See Turner v. Commissioner*, 381 F. App'x 488, 492 (6th Cir. 2010); *West v. Commissioner*, 240 F. App'x 692, 698 (6th Cir. 2007).

plaintiff did not suffer from significant deficits in adaptive functioning, as required by listing 12.05, is supported by more than substantial evidence.

Further, the absence of a diagnosis of mental retardation by any treating or examining psychiatrist, psychologist, or physician during plaintiff's developmental period provides substantial evidence supporting the ALJ's finding that she did not meet or equal the requirements of listing 12.05. *See Hayes v. Commissioner*, 357 F. App'x at 676; *see also Anthony v. Astrue*, No. 09-3252, 2010 WL 4683955, at * 14 (C.D. Ill. Oct. 26, 2010). The only IQ scores plaintiff presented stem from an April 12, 2006 consultative examination. (A.R. 179-84). IQ tests administered more than eight years after plaintiff had reached age twenty-two do not establish "significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period." *See Foster*, 279 F.3d at 354-55; *see also Turner v. Commissioner*, 381 F. App'x at 491-92; *Jones v. Commissioner*, No. 1:08-cv-562, 2009 WL 3498809, at * 4 (W.D. Mich. Oct. 26, 2009) ("[T]he great length of time separating the developmental period from the administration of the IQ test, tends to seriously undermine its probative value regarding [plaintiff's] condition over a decade earlier.") (Maloney, C.J.).

There is more than substantial evidence supporting the ALJ's finding that plaintiff did not satisfy listing 12.05's diagnostic description requirement.

B.   Part C

Plaintiff argues that the ALJ committed reversible error when he found that she did not meet or equal listing 12.05's part C severity requirements.[7] (Plf. Brief at 20-21). Part C requires

---

[7]Although the ALJ considered several listings, the hearing transcript (A.R. 346) and plaintiff's prehearing brief (A.R.145) make clear that listing 12.05(C) was the focal point of

a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(A), 12.05(C); *see West v. Commissioner*, 240 F. App'x at 697-98; *Foster v. Halter*, 279 F.3d at 354-55.  The ALJ found that although plaintiff had provided evidence of low IQ tests scores (verbal IQ of 71, performance IQ of 69, and full Scale IQ score of 67), she did not satisfy the part C criteria. (A.R. 19).  It is difficult to discern from the ALJ's opinion whether he determined the IQ scores were not valid because they underestimated her true abilities, *see Baker v. Commissioner*, 21 F. App'x 313, 315 (6th Cir. 2001), or that plaintiff lacked an impairment imposing an additional and significant work-related limitation of function, or both. (A.R. 19).  The ALJ's lack of clarity is, at most, harmless error, because the ALJ's finding that plaintiff did not meet or equal the requirements of listing 12.05's diagnostic description is supported by more than substantial evidence, and it was plaintiff's burden to demonstrate that she met or equaled *all* parts of the listing.  *See West v. Commissioner*, 240 F. App'x at  697-98; *Jackson v. Astrue*, No. 2:08-cv-1407, 2009 WL 1935873, at * 5 (W.D. Pa. July 2, 2009).  Having failed to establish the diagnostic description, plaintiff is precluded from establishing entitlement to benefits under listing 12.05.

**2.**

Plaintiff argues that this matter should be remanded for a new hearing to consider the effects of her fatigue on her ability to work.  (Plf. Brief at 21-24; Reply Brief at 4-5). The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms,

---

plaintiff's claims for DIB and SSI benefits.  Plaintiff offers no argument that she met paragraphs A, B or D.

including fatigue, was not fully credible. The ALJ's factual finding with regard to plaintiff's credibility is supported by more than substantial evidence.

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009).

The ALJ found that plaintiff's testimony regarding her fatigue and other subjective functional limitations was not fully credible:

> The claimant testified that her last job ended due to a reduction in employees. She started classes at community college but did not finish. She is living with her two children; the eldest is 14 years old. She is being treated by a chiropractor for her back pain. She also has pain in her thighs. She is limited in her ability to stand and walk. She has pain on both sides from her kidneys and needs to use the restroom often. She gets shortness of breath, swollen legs, dizzy, drowsy, and needs to recline daily. Her heart doctor told her she may have more problems from that in the future. She has a medical card and gets to appointments by her mother or public transportation.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.
>
> The claimant alleges an onset of disability of February 2005 but the medical file does not document or even imply she had any impairments prior to May 2005. During a routine office visit she was described as well-nourished, well-developed female in no acute distress. Vital signs were all within normal limits. Heart had regular rate and rhythm. Based on laboratory tests, she was started on Lisinopril and referred to a renal consultant. Through November 2005, she was treated for hypertensive urgency with medication. (Exhibit 1F)[A.R. 148-65]. The specialist from Renal Associates reported that the claimant has chronic kidney disease Stage III with GFR of 37 cc/min/1/73 sq m secondary to possible hypertension in the past which led to tubulointerstitial disease. The etiology of her kidney dysfunction was questionable at that time (Exhibit 2F)[A.R. 166-76]. In April 2006, the State Agency medical consultant, Dr. Daniel reviewed the evidence and made a determination that plaintiff could perform a significant range of light work (Exhibit 7F)[A.R. 205-14].
>
> The claimant went to a chiropractor per her testimony but not until September 2006. The findings at the time were mild in nature. Vicodin was prescribed by her treating physician. Upon physical examination in April 2007, she was diagnosed with thoracic strain (Exhibits 8F, 9F)[A.R. 215-17, 265-67].
>
> Through April 2008, the claimant was followed by Dr. Filippova at Renal Associates for chronic kidney disease. A review of intervention care demonstrates that she had a percutaneous renal biopsy on November 2, 2006 which showed focal and segmental glomerulosclerosis with moderate interstitial fibrosis, acute tubular necrosis and mild arteriosclerosis. She was placed on Prednisone that was tapered down in June 2007, until that was ceased in March 2008. She reported that her fatigue had improved and denied fever, chills, cough, pain, nausea, vomiting, diarrhea, and constipation. She denied chest

> discomfort, increased dyspnea, orthopnea, Paroxysmal Nocturnal Dyspnea (PND), or increased peripheral edema. Her lungs were clear to auscultation anterior and posterior. Cardiac examination revealed regular rate and rhythm. No diastolic murmur. No pitting edema of bilateral lower extremities. Cranial nerves were grossly intact. Her blood pressure was poorly controlled, but she admitted that she did not take her medication that day. No changes were made regarding her care and medication (Exhibit 10F)[A.R. 268-321].
>
> The claimant has been treated for pericardial effusion with chest pain and secondary shortness of breath. The October 2007 electrocardiogram otherwise showed normal sinus rhythm. She was admitted to the hospital at that time and released with referral to West Michigan Heart physician, Dr. Dickinson. She was readmitted with diagnoses of pericardial effusion, hypertension, hypothyroidism, and chronic renal insufficiency. A Vas-Cath placement, paracentesis, and hemodialysis were performed at this time. In January 2008, the claimant was evaluated regarding her Coreg titration. Little could be done with respect to her medication but she reported that she was feeling well. Her chest discomfort had decreased in occurrence and intensity. She reported some occasional lightheadedness with positional changes but that had not changed in intensity or occurrence. Otherwise, she was using her neighbor's exercise bike for a few minutes several times throughout the day. The final echocardiogram performed in March 2008 for congestive heart failure revealed asymmetric septal hypertrophy, left ventricular function was severely depressed, ejection fraction was 25 percent, global hypokinesis, and small pericardial effusion (Exhibit 9F)[A.R. 218-67].
>
> The undersigned acknowledges the claimant had significant medical intervention for her impairments. However, the surgeries, physician checkups, and use of medication have provided the claimant with much improved health. According to testimony, her kidney condition causes only some flank pain that bears watching. There is no indication that her heart condition will last the 12-month duration or significantly impact her activities. Her physicians have not submitted statements indicating she has any limitations. As such, the undersigned concludes that the residuals from her impairments are no more limiting now than in April 2006 when the State Agency reviewed the evidence (Exhibit 7F)[A.R. 205-14]. Moreover, the claimant demonstrated a greater ability to function than she alleges. She has been raising two children without constant assistance or supervision.
>
> A review of the claimant's activities of daily living demonstrates that she uses public transportation, gets her children ready for school, grooms, prepares meals, washes dishes, vacuums, shops, watches television, goes for walks, does laundry, irons, reads, communicates verbally as well as in writing, handles finances, and lives independently and unsupervised. Therefore, the established residual functional capacity is within the claimant's abilities. (Exhibits 5F, 6F, 7F)[A.R. 185-214].

(A.R. 20-21). None of plaintiff's treating physicians stated that she had functional limitations.

Further, it was appropriate for the ALJ to take plaintiff's extensive daily activities into account in

making his credibility determination. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). I find that the ALJ's factual finding regarding plaintiff's credibility is supported by substantial evidence and that a remand for further consideration of this issue is unwarranted.

**3.**

Plaintiff argues that the ALJ's "failure to include the symptom of fatigue in the hypothetical questions addressed to the vocational expert (VE) renders the vocational evidence insubstantial support for the denial of benefits." (Plf. Brief at 21). This is a mere reformulation of plaintiff's unsuccessful challenge to the ALJ's credibility determination. The ALJ found that plaintiff's subjective complaints were not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated limitations. *See Carrelli v. Commissioner*, 390 F. App'x 429, 438 (6th Cir. 2010); *Grant v. Commissioner*, 372 F. App'x 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible."). The ALJ's hypothetical question included all the limitations he found to be credible.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:  September 26, 2011            /s/  Joseph G. Scoville
                                      United States Magistrate Judge

**NOTICE TO PARTIES**

        Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).