UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LATISHA MCMILLAN, )<br>       Plaintiff, )<br>)<br>-v- )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>       Defendant. )<br>_____) | No. 1:10-cv-00308<br><br>HONORABLE PAUL L. MALONEY |

**OPINION AND ORDER MODIFYING AND ADOPTING
REPORT AND RECOMMENDATION**

Before this court is a Report and Recommendation issued by Magistrate Judge Scoville (ECF No. 12) recommending that the court affirm Defendant's decision to deny Plaintiff Latisha McMillan's claim for disability insurance benefits. Ms. McMillan objects to the magistrate judge's recommendation, arguing that the evidence establishes that she is disabled under Listing 12.05C.

For the reasons discussed below, the court finds that the Report and Recommendation is to be largely accepted. Ms. McMillan's objections, except for one, are overruled, and the Commissioner's decision is affirmed.

**I.   STANDARD OF REVIEW**

Parties have 14 days to file written objections to the proposed findings and recommendations in a magistrate judge's report and recommendation ("R&R"). 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). A district court judge reviews *de novo* the portions of the R&R to which objections have been filed, and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Only specific objections are entitled to *de novo* review under the statute, *see Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam), and the statute does not "positively require[] some lesser review by the district court

when no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to object to an issue waives that issue, along with the party's right to appeal that issue. *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *see Arn*, 474 U.S. at 155 (upholding the Sixth Circuit's practice).

"This court's review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). So long as the Commissioner's decision is supported by substantial evidence, this court must affirm, even if substantial evidence also supports the opposite conclusion and even if the court would have decided the matter differently. *See Smith v. Chater*, 99 F.3d 780, 781–82 (6th Cir. 1996).

## II.  DISCUSSION

Ms. McMillan argues that the magistrate judge erred in upholding the Commissioner's finding that she did not meet the elements of Listing 12.05C. This listing provides the criteria used to determine when "mental retardation is severe enough to preclude gainful activity." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). As relevant here, the Listing states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\* \* \*

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. This standard has two parts. The claimant must satisfy the general diagnostic description—"significantly subaverage general intellectual functioning with deficits in adaptive functioning" manifested before age 22—and she must also meet one of the four sets of criteria. Here, Ms. McMillan claims to meet only criteria set C: an IQ of 60–70 and another impairment imposing an additional, significant work-related limitation.

Ms. McMillan's objections focus on the first part of this inquiry: "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., . . . before age 22." *Id.* Specifically, Ms. McMillan objects to (1) the magistrate judge's conclusion that Ms. McMillan's academic records are insufficient to show "significantly subaverage general intellectual functioning with deficits in adaptive functioning" manifested before age 22; (2) the magistrate judge's conclusion that any deficits Ms. McMillan did have were too trivial to satisfy the standard; and (3) the magistrate judge's conclusion that the lack of any diagnosis of mental retardation before age 22 provided substantial evidence supporting the ALJ's finding. Each objection will be addressed in turn.

  *A. Ms. McMillan's School Records and Developmental Period Work Experience*

In his R&R, the magistrate judge noted that the only evidence from Ms. McMillan's developmental period are two school reports—one stating that she failed to pass her graduation competency tests, and a second stating that she is exempt from the competency tests because of a learning disability. He acknowledged Ms. McMillan's testimony that almost all of her high school classes were special-education classes, but concluded that poor school performance and placement

3

in special-education classes do not themselves satisfy the "significantly subaverage general intellectual functioning with deficits in adaptive functioning" standard. Further supporting the ALJ's determination is the fact that Ms. McMillan was able to care for herself and her baby and work as a housekeeper and line server/cook before she turned 22, which provides strong evidence that she did not suffer from deficits in adaptive functioning at that time.

Ms. McMillan objects, arguing that her academic records show that she had deficits in adaptive functioning before age 22. She argues that the cases cited in support of the magistrate judge's contrary conclusion are distinguishable.

First, in *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), the Sixth Circuit upheld an ALJ's determination that a disability claimant failed to show "significantly subaverage general intellectual functioning with deficits in adaptive functioning" before age 22. The claimant had only completed school through the ninth grade, having been placed in special-education classes, but before the injury prompting her disability claim, she had worked at a bank and as a clerk at a liquor store. After bringing her claim, she was tested as having an IQ of 68–69. The Sixth Circuit found that these facts provided substantial evidence to support the ALJ's conclusion.

Ms. McMillan argues that this case is distinguishable, as the record in *Foster* contained "no special education records and no discussion of the relevance of special education records to the assessment of limitations in adaptive functioning." This is true, but irrelevant. The court split up its analysis of the "significantly subaverage general intellectual functioning" and the "deficits in adaptive functioning" parts of the test, holding first that the claimant's school record did not establish the first prong, and second that her work history did not support the second prong. This case therefore supports the proposition that the magistrate judge cited it for: that "placement in a

special classroom falls short of establishing significantly subaverage general intellectual functioning with deficits in adaptive functioning." Further, though the record did not contain special-education records, the court appeared to acknowledge that claimant was placed in special-education classes, thus making records unnecessary. This distinction makes *Foster* no less relevant here.

Second, Ms. McMillan states that she was placed in special-education classes by "a team of educators at the Grand Rapids Public Schools," which distinguishes her situation from that in *McLeichy v. Commissioner*, No. 1:09-cv-857, 2010 WL 3852318, at * 2 (W.D. Mich. Sept. 29, 2010). It appears, however, that Ms. McMillan intended to refer to *Cheatum v. Astrue*, No. 08-cv-3626, 388 F. App'x 574 (8th Cir. 2010), cited in *McLeichy*, which discounted the relevance of a special-education placement that was not done by a "qualified mental health professional." But Ms. McMillan does not claim that any member of the "team of educators" was a qualified mental health professional, and so her distinction again fails.

Ms. McMillan next objects to the R&R's statement that "The Sixth Circuit 'has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two.'" (quoting *Hayes v. Commissioner*, 357 F. App'x 672, 677 (6th Cir. 2009)). Ms. McMillan points out that the quote refers to subaverage intellectual functioning only, and not to adaptive-skills limitations. She argues that this factor is not at issue here, as the ALJ found that her learning disability existed before age 22. While the ALJ did note that Ms. McMillan's "school records indicate that her learning disability was present before she attained age 22," the record does not make clear just what her learning disability was, and so this statement does not necessarily mean that the ALJ found that Ms. McMillan met the "subaverage intellectual functioning" requirement at the relevant time. In any case, Ms. McMillan points to no

5

authority holding that her poor academic performance alone demonstrates a deficit in adaptive functioning, contrary to the magistrate judge's implicit conclusion here.

Ms. McMillan argues that the "deficits in adaptive functioning" prong is not at issue, given the ALJ's finding that she suffers from "[m]oderate impairments in the activities of daily living and in social functioning." But the ALJ's finding only relates to Ms. McMillan's *current* restrictions, not whether she had "deficits in adaptive functioning" before age 22.

Relatedly, Ms. McMillan objects to the R&R's statement that her ability to care for herself and her baby, and her prior work as a housekeeper and line server/cook, shows that she does not suffer from adaptive deficits. She distinguishes *Harris v. Comm'r of Soc. Sec.*, 330 F. App'x 813, 815 (11th Cir. 2009), as involving only "mild" restrictions in the activities of daily living, whereas the ALJ here found that Ms. McMillan had "moderate" restrictions. While this is true, it is not particularly relevant. In discussing Listing 12.05C, the *Harris* court noted that the claimant "did well in special education classes and was able to hold several jobs," concluding that this "did not indicate the type of deficit in adaptive functioning required for mental retardation." Similarly, McMillan graduated from high school and held jobs during her developmental period, suggesting that *Harris* is an apt comparison here. Ms. McMillan also distinguishes *Bennett v. Comm'r of Soc. Sec.*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar. 31, 2011) (Maloney, C.J.), arguing that the present case differs in that she has presented evidence of functional limitations before age 22 and a psychologist did diagnose her with mental retardation (albeit long after her developmental period). But these distinctions do not establish that the ALJ improperly relied on her work history or that his decision was not supported by substantial evidence.

Ms. McMillan's objections here fail to demonstrate that the magistrate judge misapplied any

legal principles. Her distinctions, to the extent that they hold, do not show that the evidence considered was irrelevant or that the record required a finding in her favor. The court's review shows no error by the magistrate judge on these points, and so Ms. McMillan's objections here are OVERRULED.

   *B.*   *"Trivial" Deficits*

Next, Ms. McMillan objects to the magistrate judge's conclusion that only "significant" adaptive-functioning deficits would satisfy Listing 12.05's general diagnostic description, and that "trivial deficits do not suffice." Ms. McMillan argues that *any* limitation in adaptive functioning would satisfy this requirement, as the description states only that mental retardation requires "a significantly subaverage general intellectual functioning with deficits in adaptive functioning." Therefore, the moderate restrictions found by the ALJ should have been found satisfactory.

This argument fails, however. First, the Sixth Circuit precedent cited by the magistrate judge implies that insignificant or trivial deficits would not satisfy this requirement. As discussed above, *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), dealt with a disability claimant who had been in special-education classes, had completed school only through the ninth grade, had worked at a bank and a liquor store, and had been tested (after making her claim) as having an IQ of 68–69. *Id.* at 352. The Sixth Circuit found that this evidence "does not demonstrate or support onset of 'deficits in adaptive functioning' before age 22." *Id.* at 355. Though the court did not expressly state that trivial deficits are insufficient, its holding clearly implies as much. Similarly, in *Hayes v. Commissioner*, 357 F. App'x 672 (6th Cir. 2009), the Sixth Circuit found that a claimant who "cares for herself and her husband; cooks means, does laundry, and shops; manages her finances; and takes public transportation" could not show adaptive-skills limitations that satisfy Listing 12.05. *Id.* at

7

677. Again, though this does not specifically state that only significant deficits satisfy the Listing, it strongly suggests that trivial deficits would indeed fail to meet the requirement.

Second, the ALJ only found that Ms. McMillan *currently* has moderate restrictions on activities of daily life. Listing 12.05 expressly requires, however, that the adaptive-functioning deficits manifest themselves before a claimant turns 22. The ALJ's finding thus does not establish that Ms. McMillan had any adaptive-functioning deficits at the relevant time. Ms. McMillan acknowledges this point in her brief, but argues that the evidence from before she turned 22, including her failure to pass the Life Skills portion of the graduation competency test, shows that she had deficits during her developmental period as well. This argument is nothing more than an attempt to re-weigh the evidence. As the Sixth Circuit has held, though, this court must affirm the Commissioner's decision so long as it is supported by substantial evidence, "even if this Court would decide the matter differently, and even if substantial evidence also supports the claimant's position." *Hayes*, 357 F. App'x at 674. This failing grade, without more evidence of the actual content of the test or its relevance to a person's adaptive functioning, is not so overwhelming as to show that substantial evidence does not support the ALJ's position.

For these reasons, Ms. McMillan's objection is OVERRULED.

  C.  *Whether the Lack of Diagnosis Provides Substantial Evidence*

The R&R also concludes that "the absence of a diagnosis of mental retardation by any treating or examining psychiatrist, psychologist, or physician during plaintiff's developmental period provides substantial evidence supporting the ALJ's finding that she did not meet or equal the requirements of listing 12.05." Ms. McMillan objects, arguing that this conclusion is not supported by the case law.

In support of its statement, the R&R again cites *Hayes v. Commissioner*. But *Hayes* does not support this claim. The panel there found it telling that "therapists and psychologists have been treating Hayes for depression for nearly a decade, and at no point have they indicated that Hayes has limited intellectual functioning." 357 F. App'x at 676. But having no diagnosis despite a ten-year period of treatment is not the same thing as having no diagnosis during one's developmental period, particularly where, as here, there is no evidence that McMillan was treated by mental-health professionals during that time.

The other case cited in the R&R, *Anthony v. Astrue*, No. 09-cv-3252, 2010 WL 4683955, at *14 (C.D. Ill. Oct. 26, 2010), is also not particularly relevant here. Besides being the decision of a different district court, *Anthony* involved a situation where there was no evidence of mental deficiency before age 22. In such a situation, the court's statement that the ALJ's ruling was supported by substantial evidence should not be read as a broader ruling that the mere lack of a diagnosis before age 22 constitutes substantial evidence of a failure to meet Listing 12.05.

As Ms. McMillan points out, the Commissioner has acknowledged in the Federal Register that pre-22 IQ testing should not be required to satisfy Listing 12.05:

> The proposed listing . . . stated that the significantly subaverage general intellectual functioning with deficits in adaptive behavior must have been initially "manifested" during the developmental period. *We have always interpreted this word to include the common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period.*

65 Fed. Reg. 50746, 50772 (August 20, 2000) (emphasis added). Indeed, several courts of appeals have gone so far as to presume that a person's IQ remains more or less constant through her life, absent evidence of a reason to suspect otherwise, thus allowing a later IQ test to establish

significantly subaverage general intellectual functioning prior to age 22. *See Hodges v Barnhart*, 276 F3d 1265, 1268–69 (11th Cir. 2001); *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) ("Mental retardation is not normally a condition that improves as an affected person ages . . . . Rather, a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning."); *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989) (courts should assume that IQ remains constant absent evidence of change in intellectual functioning). The Sixth Circuit has not found such a presumption, *see Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001) (finding substantial evidence to deny benefits despite later IQ test results), but nor has it suggested that the lack of testing alone provides substantial evidence to support a denial of benefits. At best, therefore, this appears to be an open question in this circuit.

The court need not decide this unresolved issue, however. This part of the R&R provided only a secondary basis on which to sustain the ALJ's ruling; it was not necessary to resolve the case. The R&R's discussion can be struck from the R&R without changing the outcome, and it hereby is. To the extent that Ms. McMillan objects to this conclusion, her objection is SUSTAINED.

### III.   CONCLUSION

Given the fact-heavy nature of decisions regarding Social Security claims, a claimant will virtually always be able to find some difference between her case and others'. It is the principles animating these decisions that is important, not the exact correspondence of factual details. Ms. McMillan's distinctions do not refute the general principles applied by the magistrate judge, and she does not show that the legal framework here was deficient. Her objections here boil down to a dispute about the sufficiency of the evidence. But the standard here is a high one. The court must

affirm the Commissioner so long as his opinion is supported by substantial evidence, "even if this Court would decide the matter differently, and even if substantial evidence also supports the claimant's position." *Hayes*, 357 F. App'x at 674. The evidence here, as described in the magistrate judge's R&R, is sufficient to support the Commissioner's decision, and so this court may not disturb it.

## ORDER

For the reasons discussed above, **IT IS HEREBY ORDERED** that:

1. The report and recommendation (ECF No. 12) is **MODIFIED** by removing the second-to-last paragraph in Discussion section 1.A.;

2. The report and recommendation, as modified, is **ACCEPTED**; and

3. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**


Date:   January 11, 2012                    /s/ Paul L. Maloney
                                           Paul L. Maloney
                                           Chief United States District Judge